IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NELSON LORA-PENA | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-442-SLR |
| v. | : | |
| | : | |
| FEDERAL BUREAU OF | : | |
| INVESTIGATION, UNITED STATES | : | |
| MARSHAL SERVICE, DEPUTY U.S. | : | |
| MARSHAL ROBERT DENNEY, | : | |
| DEPUTY U.S. MARSHAL JACK LEO, | : | |
| DEPUTY U.S. MARSHAL WILLIAM | : | |
| DAVID, SUP. DEP. U.S. MARSHAL | : | |
| THOMAS DAVIS, FUGITIVE | : | |
| APPREHENSION TASK FORCE, | : | |
| TASK FORCE OFFICER FLETCHER, | : | |
| TASK FORCE OFFICER DAILY, TASK | : | |
| FORCE OFFICER BOWERS, and STATE | : | |
| POLICE TROOPER HAHN | : | |
| | : | |
| Defendants. | : | |

**OPENING BRIEF IN SUPPORT OF THE
DEFENDANTS' MOTION TO DISMISS**

COLM F. CONNOLLY
United States Attorney

By: Seth M. Beausang (I.D. No. #4071)
    Assistant United States Attorney
    1007 N. Orange Street, Suite 700
    Wilmington, Delaware 19801
    (302) 573-6277

Dated: January 12, 2007.

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.     Summary Of The Evidence Offered By The
Government In Plaintiff's Criminal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.     Summary Of The Evidence Offered By The
Defense In Plaintiff's Criminal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.     The Court's Instructions And The
Jury's Verdict From Plaintiff's Criminal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.     Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

I.      STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II.     PLAINTIFF'S *BIVENS* CLAIMS ARE BARRED
BY *HECK* AND SHOULD BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        A.     Plaintiff's *Bivens* Claims Are Barred By *Heck*
Because A Judgment In Plaintiff's Favor Would
Necessarily Imply The Invalidity Of Plaintiff's
Conviction For Assaulting Deputy Marshal Leo. . . . . . . . . . . . . . . . . . . . . . . . 20

        B.     Plaintiff's *Bivens* Claims Are Also Barred By *Heck*
Because Plaintiff Makes Allegations That,
If Believed, Would Necessarily Imply The
Invalidity Of Plaintiff's Convictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.    PLAINTIFF'S STATE LAW CLAIMS AGAINST THE
UNITED STATES SHOULD BE DISMISSED FOR LACK
OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE**

*Banks v. 3311 East Carson St.*,
   No. 04-1771, 2006 WL 1843042 (W.D. Pa. June 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . 20

*Ballard v. Burton*,
   444 F.3d 391 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*,
   983 F.2d 495 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Biase v. Kaplan*,
   852 F. Supp. 268 (D.N.J. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Brown v. Pfaff*,
   No. 03-404-SLR, 2004 WL 422671 (D. Del. Mar. 3, 2004) . . . . . . . . . . . . . . . . . . . 22-23

*Couden v. Duffy*,
   446 F.3d 483 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Cummings v. City of Akron*,
   418 F.3d 676 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 24

*D'Alessandro v. EEOC*,
   215 F. Supp. 2d 419 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Daniels v. Guthrie Clinic Ltd.*,
   No. 3:CV-96-0058, 1996 WL 806634 (M.D. Pa. Dec. 27, 1996) . . . . . . . . . . . . . . . . . . 26

*Edwards v. Balisok*,
   520 U.S. 641 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Heck v. Humphrey*,
   512 U.S. 477 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Holder v. Ivanjack*,
   93 F. Supp. 2d 933 (N.D. Ill. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

**CASES**                                                                                              **PAGE**

*Hubbs v. Alamao,*
    360 F. Supp. 2d 1073 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

*Hudson v. Hughes,*
    98 F.3d 868 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hunt v. Liberty Lobby, Inc.,*
    707 F.2d 1493 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Jackson v. Mills,*
    No. 96-3751, 1997 WL 570905 (E.D. Pa. Sept. 4, 1997) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Leveto v. Lapina,*
    258 F.3d 156 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Livera v. First Nat. State Bank of N.J.,*
    879 F.2d 1186 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 27

*Morse v. Lower Merion Sch. Dist.*
    132 F.3d 902 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nelson v. Jashurek,*
    109 F.3d 142 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Obeng v. De. State Police,*
    No. 04-1248 (GMS), 2005 WL 1592951 (D. Del. July 7, 2005) . . . . . . . . . . . . . . . . . . 26

*Okoro v. Callagham,*
    324 F.3d 488 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25

*Paramount Aviation Corp. v. Augusta,*
    178 F.3d 132 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Robinson v. Lother,*
    No. 04 C 2382, 2006 WL 418664 (N.D. Ill. Feb. 15, 2006) . . . . . . . . . . . . . . . . . . . 21-22

*Smith v. Mitchell,*
    No. 97-6115, 2000 WL 33256676 (D.N.J. Nov. 21, 2000) . . . . . . . . . . . . . . . . . . . . . . 22

**CASES**                                                                                **PAGE**

*United States v. Goodwin*,
    440 F.2d 1152 (3d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24-25

*United States v. Jennings*,
    855 F. Supp. 1427 (M.D. Pa. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Lopez*,
    710 F.2d 1071 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Span*,
    970 F.2d 573 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wood v. Smith*,
    No. 99-1436-KI, 2001 WL 34047028 (D. Or. Apr. 5, 2001) . . . . . . . . . . . . . . . . . . . . 22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C. § 111 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 20-21, 24

28 U.S.C. § 2679(b)(1) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 25

28 C.F.R. § 15.4(b) (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## NATURE AND STAGE OF THE PROCEEDINGS

On April 9, 2005, Plaintiff was arrested by members of the United States Marshal Service Fugitive Task Force (the "Individual Defendants").[1]  (*See* Court's September 22, 2006 Memorandum and Order, Doc. No. 4 at 6.)  At the time, Plaintiff was a fugitive as he was the subject of an outstanding arrest warrant for violation of supervised release.  (*Id.*)  Independent of the charges that gave rise to that arrest warrant, Plaintiff was charged and convicted by a jury of four counts of forcibly assaulting, resisting, and interfering with the officers who arrested him. (*Id.*; *see also United States v. Lora-Pena*, Crim. No. 05-CR-47-KAJ (D. Del.) (docket) (attached hereto as Ex. A).)  Plaintiff's defense at his criminal trial was that he did not forcibly resist arrest or assault the officers and that, rather, it was Deputy Marshal Leo who for no reason attacked and beat Plaintiff, who merely tried to protect himself.  On September 16, 2005, a jury rejected that defense and convicted Plaintiff.  (Ex. A.)

On July 20, 2006, Plaintiff appeared pro se and filed the present action, making the same claim that the jury rejected at his criminal trial, namely, that Deputy Marshal Leo used excessive force when he helped to arrest Plaintiff.  The Complaint alleges that the remaining Individual Defendants failed to protect Plaintiff from Deputy Marshal Leo, even though during his criminal trial Plaintiff testified that some of the officers tried to stop Deputy Marshal Leo.  The Court reviewed the Complaint pursuant to 28 U.S.C. § 1915A and dismissed the claims against the named United States agencies.  (Doc. No. 4 at 8.)  Plaintiff was allowed to proceed with his

---

[1] The Individual Defendants as they are named in the Complaint are: U.S. Marshals Jack Leo, William David, Robert Denney, and Thomas Davis; Task Force Officers Fletcher, Daily, and Bowers; and State Police Trooper Hahn.  U.S. Marshal David Thomas is misnamed as "Thomas Davis" in the Complaint.  Officers Fletcher and Hahn are Delaware State Troopers.  Officer Daily and Officer Bowers are Wilmington and New Castle County police officers.  All of the state and local officers were authorized to act as Special Deputy United States Marshals at all times relevant to this Complaint.

claims against the Individual Defendants.  (*Id.*)

On January 11, 2007, the United States Attorney for the District of Delaware certified pursuant to 28 U.S.C. § 2679(d)(1) (2006) and 28 C.F.R. § 15.4(b) (2006) that each of the Individual Defendants were acting "within the scope of their employment as employees of the United States at the time of the conduct alleged in the Complaint," and moved that the United States be substituted as the sole Defendant in place of all of the individual Defendants with respect to Plaintiff's state law claims.  The Individual Defendants will remain in the case to defend against Plaintiff's *Bivens* claims.  This is the Opening Brief in support of the Defendants' Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

1.      Where, as here, a plaintiff who has been convicted of a crime files a complaint alleging *Bivens* claims, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

2.      Here, Plaintiff was convicted of: (1) assaulting Deputy Marshal Leo; (2) using a dangerous weapon to forcibly assault, resist, or interfere with Deputy Marshals Denney ("Supervisor Denney") and David; and (3) forcibly assaulting, resisting, or interfering with Marshal Thomas, while those officers were in the performance of their official duties, all in violation of 18 U.S.C. § 111 (2006).  (*See* Ex. A.)  Plaintiff's convictions remain valid.  (*Id.*)

3.      Plaintiff's *Bivens* claims are barred by *Heck* and should be dismissed because a judgment that Deputy Marshal Leo used excessive force when he helped to arrest Plaintiff would necessarily imply the invalidity of Plaintiff's conviction for assaulting Deputy Marshal Leo, given that Plaintiff would have been entitled to defend himself had Deputy Marshal Leo used excessive force.  *See, e.g.*, *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005) ("Cummings' only defense to the assault charge against him would have been to claim that the officers used excessive force.  Cummings did not make such an argument, instead pleading no contest to assaulting Vaughn.  It is for this reason that *Heck* bars Cummings' Fourth Amendment excessive force claim from moving forward in the instant lawsuit.").

4.      Plaintiff's *Bivens* claims are also barred by *Heck* and should be dismissed because Plaintiff's Complaint alleges that the first officer did not identify himself and that Plaintiff ran

for his safety (Compl. ¶¶ 14, 17) and, if that were true, it would necessarily imply the invalidity

of Plaintiff's convictions because he would have had an affirmative defense to the charges under

18 U.S.C. § 111 (2006). *See, e.g.*, *United States v. Goodwin*, 440 F.2d 1152, 1156 (3d Cir. 1971)

(stating that a defendant has an affirmative defense to charges under 18 U.S.C. § 111 if he

"neither knows nor should know that he is being arrested and reasonably believes that he is being

subjected to a hostile attack against his person").

      5.      Plaintiff's *Bivens* claims are also barred by *Heck* and should be dismissed because

Plaintiff's Complaint alleges that Plaintiff ran away and then "fell and curled up in a ball

position" (Compl. ¶ 17) when confronted by the Individual Defendants and, if that were true, it

would necessarily imply the invalidity of his convictions for assaulting the officers. *See,*

*e.g.*, *Okoro v. Callagham*, 324 F.3d 488, 490 (7th Cir. 2003) (holding that if a plaintiff "makes

allegations that are inconsistent with the convictions having been valid, *Heck* kicks in and bars

his civil suit").

      6.      Plaintiff's state law tort claims against the United States should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The Federal Tort

Claims Act ("FTCA") is the exclusive means to hold the United States liable in tort. *See* 28

U.S.C. § 2679(b)(1) (2006). Plaintiff's FTCA claims should be dismissed because Plaintiff does

not allege that he exhausted his administrative remedies, as the FTCA requires. *See, e.g.*, *Livera*

*v. First Nat. State Bank of N.J.*, 879 F.2d 1186, 1194-95 (3d Cir. 1989) (affirming the dismissal

of the plaintiff's FTCA claim: "We agree with the district court here that the [plaintiff] failed to

carry the burden of establishing that even the rudiments of an administrative claim were filed.").

## STATEMENT OF FACTS[2]

On April 9, 2005, Plaintiff, a fugitive, was arrested by members of the United States Marshals Service Fugitive Task Force.  (*See* Doc. No. 4 at 6.)  Plaintiff forcibly resisted arrest and assaulted the officers who arrested him.  (*Id.*)  As a result, Plaintiff was charged and convicted by a jury of four counts of forcibly assaulting, resisting, and interfering with the officers who arrested him.  (*Id.*; *see also* Ex. A.)

The story that Plaintiff tells in his Complaint, with a few minor differences, is the same story he told the jury at his criminal trial, and the same story the jury rejected.  Four marshals testified at Plaintiff's trial and explained how Plaintiff resisted arrest and assaulted the officers.  Among other things, the officers described how Plaintiff was "scratching," "clawing," and "punching" Deputy Marshal Leo, and how Plaintiff used his two pit bulls to assault two other marshals.  (*See* relevant portions of the Trial Transcript from Plaintiff's criminal trial, attached hereto as Ex. B at A-101 – 103, A-168, A-221.)

Plaintiff then testified and denied that he struck or threatened the officers saying, "[t]he only thing I could do is cover myself."  (*Id.* at B-28, B-34.)  Instead, Plaintiff claimed that Deputy Marshal Leo "tackled" and "kept hitting [Plaintiff] for no reason."  (*Id.* at B-28.)  Plaintiff's lawyer told the jury in his closing argument that Plaintiff was merely "protecting" himself from Deputy Marshal Leo.  (*Id.* at B-98.)  Plaintiff's lawyer stated in his closing argument that to convict Plaintiff the jury would have to find that Deputy Marshal Leo was acting "in his official

---

[2]The Statement of Facts is drawn entirely from Plaintiff's Complaint and documents that can be judicially noticed, such as the trial transcript and docket from Plaintiff's criminal trial in *United States v. Lora-Pena*, Crim. No. 05-CR-47-KAJ (D. Del.).  *See, e.g., Hubbs v. Alamao*, 360 F. Supp. 2d 1073, 1075 n.2 (C.D. Cal. 2005) (on a motion to dismiss, taking judicial notice of court transcripts to apply *Heck* analysis).

duty," and explained that an officer who uses excessive force is not acting in his official duty: "[w]hen you're laying there and you're pounding somebody's face in and you're pounding him and you're pounding him, I don't care what you are wearing that says 'police.' *You're not acting in your official duty*." (*Id.* at B-97 – B-98 (emphasis added).)  The court then instructed the jury to convict Plaintiff only if it found that Deputy Marshal Leo was acting in the performance of his official duties, rather than being involved in some "personal venture of his own." (*Id.* at B-122.)

As explained below, the jury rejected Plaintiff's story and found beyond a reasonable doubt that Deputy Marshal Leo *was* acting in the performance of his official duties and, *ipso facto*, that Deputy Marshal Leo *was not* using excessive force.

## A.    Summary Of The Evidence Offered By The Government In Plaintiff's Criminal Case.

Deputy Marshals David and Leo, Marshal Thomas, and Supervisor Denney all testified for the United States at Plaintiff's criminal trial.  Deputy Marshal David testified that on April 9, 2005 he arrived at Plaintiff's residence at around 1:30 or 2:00 in the afternoon to look for Plaintiff, who was the subject of a federal arrest warrant. (*Id.* at A-85-86.)  Upon seeing Plaintiff, Deputy Marshal David "radioed additional members of the [fugitive] task force" and told them Plaintiff was present.

Deputy Marshal David testified that Deputy Marshal Leo, Marshal Thomas, and Supervisor Denney arrived thereafter with additional state and local law enforcement officers. (*Id.* at A-87.)  Marshal Thomas and Supervisor Denney proceeded to the rear of Plaintiff's residence to "cover the back" in case Plaintiff tried to "flee out the back of the residence," (*id.* at A-88), while Deputy Marshals David and Leo approached the front door of Plaintiff's residence,

6

(*id.* at A-97).  All of the officers were wearing vests that had "police" written in white letters across the front.  (*Id.* at A-89.)

Deputy Marshal David testified that as he and Deputy Marshal Leo approached Plaintiff's front door, he could see Plaintiff through a glass storm door.  (*Id.* at A-98.)  Deputy Marshal David told Plaintiff "police, let me see your hands" and ordered him to come to the door.  (*Id.* at A-99 – A-100.)  Plaintiff began to walk to the door, at which time Deputy Marshal David noticed "two very large pit bulls at [Plaintiff's] feet" that were "barking, growling, snarling," and "lunging against the door."  (*Id.* at A-100.)  Deputy Marshal David then drew his weapon and told Plaintiff to control his dogs.  (*Id.* at A-101.)  Plaintiff, "in a simultaneous motion, pushed the [front] door open as he turned and fled to the rear of the residence."  (*Id.*)  One of the pit bulls then "lunged out of the door" but failed to get out of the house because Deputy Marshal David "kicked the door shut, catching the dog in the side of the mouth as he was coming out."  (*Id.* at A-103.)

Deputy Marshal David testified that he saw Plaintiff flee towards the rear of the residence and, "a few moments later," Plaintiff came back into his direction, first going right, then left. (*Id.* at A-104 – A-106.)  Deputy Marshal David then saw Plaintiff running through the house chased by Marshal Thomas and Supervisor Denney, with the pit bulls at the officers' feet.  (*Id.* at A-107 – A-108.)  Deputy Marshal David entered the house and saw Supervisor Denney "attempting to grab a hold of [Plaintiff] and get him on to the floor" and Plaintiff "spinning and turning in an attempt to get around Supervisor Denney."  (*Id.* at A-110 – A-111.)  Deputy Marshal David attempted to "help out" but one of the pit bulls lunged at him and backed him into a bedroom.  (*Id.* at A-111.)  Plaintiff was down the hall "[r]unning and pushing past Supervisor

7

Denney and Marshal Thomas." (*Id.* at A-113.) The other pit bull had Supervisor Denney's pant

leg in his mouth. (*Id.* at A-114.) Supervisor Denney kicked the dog away and instructed Deputy

Marshal David to contain the dogs. (*Id.* at 115.) Supervisor Denny and Deputy Marshal David

were then able to contain the dogs in a bedroom, at which time they heard a gun shot. (*Id.* at A-

115 – A-117.) Deputy Marshal David then described running down the hallway and observing

Deputy Marshal Leo and Marshal Thomas struggling with Plaintiff:

> Q:    All right. What, if anything, did the two of you do upon hearing the gun
>       shot?
>
> A:    I immediately ran out that hallway to the end and observed Marshal
>       Thomas on the floor, attempting to gain control of [Plaintiff's] legs. I saw
>       the [Plaintiff] obviously on the floor. I saw Deputy [Marshal] Jack Leo on
>       his knees along the right side of the [Plaintiff].
>
> Q:    All right. And what was the [Plaintiff] doing? Please describe for the
>       jury.
>
> A:    The [Plaintiff] was thrashing around, turning his body, kicking his legs,
>       attempting to get up, crawling, just everything he could do not to be taken
>       into custody.

(*Id.* at A-117.)

Deputy Marshal David assisted by "attempt[ing] to gain control of [Plaintiff's] left arm,"

which he was able to do "after a few moments of struggling." (*Id.* at A-118.) In the meantime,

"Deputy [Marshal] Leo [was] attempting to get [Plaintiff's] right arm behind him so we could

apply handcuffs." (*Id.* at A-119.) Eventually, the officers were able to handcuff Plaintiff. (*Id.* at

A-120.) Plaintiff continued to resist, however:

> Q:    After the handcuffs are put on to the defendant, did he stop struggling?
>
> A:    No.

8

Q:    What did he do?

A:    Continued to kick his legs, attempted to try to get up.  We again had to try and contain and control him.  So we held his legs.  I asked for someone to retrieve a set of what we call full restraints from my vehicle, which includes leg irons.

(*Id.*)  After the officers applied leg irons and a waist chain, Plaintiff finally stopped resisting. (*Id.* at A-121.)

Supervisor Denney was the next government witness.  Supervisory Denney testified that he arrived at Plaintiff's residence around 2:00 to 2:30 in the afternoon on April 9, 2005 and proceeded to cover the rear of the residence with Marshal Thomas.  (*Id.* at A-163 – A-164.) Supervisor Denney described hearing Deputy Marshal David on the radio announcing that Plaintiff was "coming to the back" and then seeing Plaintiff "run out the rear of the residence." (*Id.* at A-165.)  Plaintiff got to within "eight-or-ten feet" of the officers who were "screaming for him to 'stop, police,'" before Plaintiff "turned around and ran back into the residence."  (*Id.* at A-166.)  Plaintiff left the rear sliding glass door open after he re-entered the residence, at which time Supervisor Denny saw that "a large ferocious pit bull was running towards us inside the residence, coming towards that sliding glass door.  Marshal Thomas reached over and slammed the door shut to prevent the dog from getting out into the yard with us."  (*Id.* at A-168.)

A minute or two later Supervisor Denny saw that Plaintiff "had gotten his head and torso out of the back window, attempting to come out the window when Trooper Hahn reached up and tried to grab him, and [Plaintiff] slipped [Trooper Hahn's] grasp and slid back into the residence again."  (*Id.* at A-170.)  After another minute or so Supervisor Denney, who was still outside, saw Plaintiff through the sliding glass door as Plaintiff came into the kitchen.  (*Id.* at A-171.)

9

Plaintiff had his hands up and was asking Supervisor Denney, "What is this about?  What do you want?"  (*Id.* at A-172.)  Supervisor Denney kept saying "Come to me" and took two steps towards Plaintiff, who then "took off running" towards the living room, with Supervisor Denney in pursuit.  (*Id.* at A-172 – A-173.)

Plaintiff reached a back bedroom door at which time Supervisor Denney "attempted to pin him against the door with my forearm."  (*Id.* at A-175.)  "The door popped open and [Plaintiff] and [Supervisory Denney] stumbled into that bedroom."  (*Id.*)  Supervisor Denney "then attempted to gain control of [Plaintiff] by placing him on the ground."  (*Id.*)  Plaintiff was able to break free and as Supervisor Denney turned he "saw the pit bull right at my feet, barking, growling, showing his teeth."  (*Id.* at A-176.)  Supervisor Denney kicked the dog away as he "lost control and sight of [Plaintiff]."  (*Id.* at A-177.)  With assistance from Deputy Marshal David, Supervisor Denney was able to secure both dogs in a room and close the door.  (*Id.* at A-177 – A-178.)  At that time Supervisor Denney heard a gun shot and both he and Deputy Marshal David turned and ran towards the sound of the gun shot.  (*Id.* at A-178.)

Supervisor Denney then saw Deputy Marshal Leo and Trooper Hahn struggling with Plaintiff in the living room.  (*Id.*)  Plaintiff "was fighting to attempt to not be cuffed, to not be taken into custody."  (*Id.* at A-179 – A-180.)  Supervisor Denney testified that he heard a "lot of screaming" and Deputy Marshal Leo telling Plaintiff, "Give me your hand.  Stop fighting." (*Id.* at 179.)  After another "minute of so," Plaintiff was taken into custody.  (*Id.*)

Marshal Thomas was the next government witness.  Marshal Thomas testified he was in the rear of Plaintiff's residence with Supervisor Denney when he "saw [Plaintiff] running out of the house" and then Plaintiff "turned around and ran back into the house."  (*Id.* at A-196.)

10

Marshal Thomas testified that he followed Supervisor Denney into the house and saw Plaintiff struggling with "some deputies who were trying to restrain him." (*Id.* at A-197 – A-198.) Marshal Thomas grabbed Plaintiff's knees and Plaintiff and the other officers "fell to the ground." (*Id.*) Plaintiff was throwing his arms. He was just basically trying to get away, hitting and just flailing his arms." (*Id.* at A-199.) Plaintiff's hands "were hitting the people trying to restrain him." (*Id.* at 207.) Eventually, Plaintiff was handcuffed, but "he was still very uncooperative. He was kicking. He was causing such a problem that [Marshal Thomas] actually had to stand on the back of his legs and he was still kicking." (*Id.* at A-200.)

Deputy Marshal Leo was the last government witness. Deputy Marshal Leo testified that he was behind Deputy Marshal David as they approached the front door of Plaintiff's residence. (*Id.* at A-212.) Deputy Marshal Leo was carrying a handgun in a holster and a rifle in front of him. (*Id.* at A-213.) He described seeing Plaintiff through the glass storm door. (*Id.* at A-214.) He also described how Plaintiff's pit bulls "were acting aggressively," by "snarling, showing their teeth and scratching at the door." (*Id.*) Plaintiff approached the front door, paused, and then "pivoted on his foot, opened the door and ran towards the back of the house." (*Id.* at A-215.) The pit bulls attempted to get out of the door so Deputy Marshal David "forced the door shut with his foot." (*Id.* at A-216.)

Deputy Marshal Leo then described seeing Plaintiff running through the house pursued by Marshal Thomas and Supervisor Denney, who were being chased by the dogs. (*Id.* at A-217.) At that time, Deputy Marshals Leo and David entered the residence to "defend our other officers." (*Id.*) Deputy Marshal Leo could see Marshal Thomas and Supervisor Denney in a hallway struggling with both Plaintiff and the dogs. (*Id.* at A-218 – A-219.) Plaintiff "was able to break

11

free" from those officers because they "were under assault by the pit bulls" and then Plaintiff

charged into Deputy Marshal Leo. (*Id.* at A-219.) Deputy Marshal Leo testified that at that time

he was concerned about, among other things, protecting his rifle which was in front of him:

> Q:    All right. And when [Plaintiff] charged into you, what happened?
>
> A:    My concerns were to protect the weapon, to protect myself and to keep
>        him from getting away from me. So I had to maintain control of the
>        weapon with my right hand and I grabbed him with my left hand in an
>        effort to keep him from getting away.

(*Id.* at A-220.)

Deputy Marshal Leo testified that he and Plaintiff fell backwards into a wall as Plaintiff

"was trying to escape. He was scratching. He was clawing. He was punching. He was digging

his nails into my hands, into my scalp. He was grabbing my weapon. And he was, he was

basically trying to get it away from me." (*Id.* at A-221.) Deputy Marshal Leo was using his right

hand to control his weapon, holding onto Plaintiff with his left hand, and defending himself by

striking Plaintiff "in the upper face area with my forehead very hard, very hard on a couple of

occasions, at least two that I can recall distinctly." (*Id.* at A-223.) Plaintiff continued to struggle

so Deputy Marshal Leo struck Plaintiff with his elbow, fist and forearm, all to no avail – Plaintiff

"continued to struggle after that." (*Id.* at A-224.)

At that point, "it really got stepped up because while [Plaintiff] was clawing at [Deputy

Marshal Leo's] hands and trying to get the rifle, he caused it to discharge or fire a round through

this door here and out into the neighborhood." (*Id.* at A-225.) Still, Plaintiff refused to give up.

(*Id.* at A-231.) "He continued to struggle. He continued to do the same thing. He continued to

punch and scratch and claw. However, at the same time, the marshal was assisting me and we

were able to direct [Plaintiff] to the ground." (*Id.*)  Deputy Marshal Leo testified that at "that

point, [Plaintiff] continued to kick.  He continued to try to get up, and again grabbing our arms,

grabbing at our faces, things of that nature." (*Id.*)  Finally, the officers were able to get Plaintiff

"handcuffed and leg cuffed and subdued." (*Id.* at A-232.)  Afterwards, Deputy Marshall Leo

noticed that he had cuts on his hands that had been inflicted by Plaintiff's fingernails.  (*Id.* at A-

235.)

On cross-examination, Plaintiff's lawyer tried to get Deputy Marshal Leo to admit that he

used excessive force in subduing Plaintiff.  For example, Plaintiff's lawyer suggested that Deputy

Marshal Leo repeatedly punched Plaintiff while Plaintiff was semi-conscious, which Deputy

Marshal Leo denied:

> Q:     If [Plaintiff] were to testify that you punched his face repeatedly while he
>        was laying on the ground, semiconscious, is that a lie?
>
> A:     That would be partially true.
>
> Q:     Why would a person be punched in a semiconscious state?
>
> A:     It would be partially true because he was not semiconscious and he was
>        not punched repeatedly throughout the entire time he was on the floor.  I
>        struck him when we were on the floor together and he was grabbing at me.
>        But when he began to comply, I no longer needed to defend myself and he
>        was no longer punched.

(*Id.* at B-13.)

Plaintiff's lawyer also suggested that Deputy Marshal Leo placed Plaintiff in a choke hold

and that other marshals had to pull Deputy Marshal Leo off, which he also denied:

> Q:     Marshal, did any other marshals have to come to [Plaintiff's] aid and bring
>        you off of him in a choke hold?
>
> A:     Absolutely not.

Q:    If [Plaintiff] were to testify in this court that the two marshals, without knowing their name, who were at the front door are the ones that beat him until the two marshals at the backdoor came in to pull you off, that is a lie?

A:    That would be untruthful.

(*Id.*)

**B.    Summary Of The Evidence Offered By The Defense In Plaintiff's Criminal Case.**

Plaintiff then testified in his defense.  Plaintiff admitted that when he saw the officers outside his front door, they were wearing police vests, Plaintiff knew they were law enforcement officers, and Plaintiff ran because he knew he was a fugitive:

Q:    And you saw some people at the front door or coming toward the front door; correct?

A:    That's correct.

Q:    And they had police vests on, did they not, sir?

A:    Yes, they did.

                        *        *        *

Q:    And when you saw them at the front, you knew they were police officers or law enforcement officers; correct?

A:    Yes.

                        *        *        *

Q:    Okay.  What was done by them and what was done by you?

A:    When I saw them, I panicked because I was on the run.  I panicked.  Been on the run for ten years, so, you know.  So what I tried to do, I tried to run to the backdoor, to the slide door, open the slide door, went outside.  And they were there, too.

(*Id.* at B-26, B-37 – B-38.)

14

Plaintiff testified that he then ran back into the house where, he claimed, Deputy Marshal

Leo tackled Plaintiff and began beating him "constantly," "for no reason, like it was personal":

> Q:    This is after you came back from the rear door?
>
> A:    Yes.
>
> Q:    And what happened?
>
> A:    He tackled me.
>
> Q:    Okay.  And where did he tackle you?
>
> A:    Right in the hallway.  In the hallway, next to just like the closet there.
>        When he tackled me, he put me to the wall.  He started hitting me for no
>        reason, like it was personal.  He started beating me up.  And I cover
>        myself.  The only thing I could do is cover myself but he kept constantly
>        hitting me for no reason, and I have been arrested before but I didn't think
>        it was going to be like this.

(*Id.* at B-27 – B-28.)

Plaintiff also testified that the two officers "out back" (presumably Supervisor Denney

and Marshal Thomas) attempted to stop Deputy Marshal Leo's alleged attack on Plaintiff:

> Q:    Okay.  Tell the jury when the marshals from out back came in, what they
>        did.
>
> A:    They tried to get [Deputy Marshal Leo] off of me because he didn't stop
>        hitting me.

(*Id.* at B-31.)

Finally, Plaintiff claimed that he did not "ever strike any marshal" or "threaten to strike

any marshal" and did not "open the doors so [his] dogs could go out and bite" the officers.  (*Id.* at

B-34 – B-35.)

15

**C.       The Court's Instructions And The Jury's Verdict From Plaintiff's Criminal Case.**

Plaintiff's lawyer told the jury in his closing argument that Deputy Marshal Leo was not

acting in his official duty because he was "pounding" Plaintiff who was merely "protecting"

himself:

> Well, an assault can't occur by accident.  An assault can't occur by *protecting*
> *yourself.*  An assault has to be intentional. . . .  It has to be his conscious object to
> assault him with force.  Intentional, with force.  And the marshal has to be acting
> in his official duty.
>
> When your laying there and you're pounding somebody's face in and you're
> pounding him and you're pounding him, I don't care what you are wearing that
> says "police."  *You're not acting in your official duty*.  That is not what you are
> sworn to do.  Whether this guy is a boxer or an actor or a soprano, that is not what
> your official duty is.

(*Id.* at B-97 – B-98 (emphasis added).)

The Court then instructed the jury that it could only convict Plaintiff if the jury found that

the officers were acting in their official duties when they arrested Plaintiff:

> The third element the Government must prove beyond a reasonable doubt is that
> at the time of the alleged assault, the federal officer was engaged in the
> performance of his official duties.  You may find that the federal officer was
> engaged, if you find at the time of the alleged assault, he was acting within the
> scope of what he was employed to do.  On the other hand, if you find that the
> federal officer was involved in a personal venture of his own, you must find that
> he was not engaged in the performance of his official duties, and you must acquit
> the defendant of the crime charged.

(*Id.* at B-122.)

The Court considered giving the jury an explicit self-defense instruction, but Plaintiff's

lawyer told the Court, "I don't want it":

> Prosecutor:                . . . In particular, the Government did supply the defense
>                                 with a lawful self-defense jury instruction, reserved based
>                                 on the testimony at trial . . . .  Here, although we are waiting

16

> to see whether in fact the defense was in fact conceding, as [defense counsel] said in his opening, it is now been established from the defendant's testimony, and there is no contest apparently, that he knew the individuals who were allegedly assaulted in this case were law enforcement officers.
>
> Defense counsel:    Judge, if I could interrupt. I don't want it anyway . . . .
>
> *       *       *
>
> Court:    All right. It's out.

(*Id.* at B-53 – B-55.)

The jury then convicted Plaintiff of all the charges, namely, (1) assaulting Deputy Marshal Leo; (2) using a dangerous weapon to forcibly assault, resist, or interfere with Supervisor Denney and Deputy Marshal David; and (3) forcibly assaulting, resisting, or interfering with Marshal Thomas. (Ex. A; Ex. B at B-118 – B-126 (jury instructions describing the elements of each charge).) By concluding that Plaintiff was guilty of assaulting Deputy Marshal Leo, the jury had to reject Plaintiff's claim that Deputy Marshal Leo used excessive force when he arrested Plaintiff because, had the jury believed and found that Deputy Marshal Leo used excessive force, then the jury could not have found that Deputy Marshal Leo was acting in the performance of his official duty. Plaintiff's convictions remain valid. (*See* Ex. A.)

## D.    Plaintiff's Complaint.

Plaintiff then filed this action. Plaintiff's Complaint tells a story that is similar to the one he told the jury at his trial, namely, that Plaintiff did not resist the officers and that Deputy Marshal Leo used excessive force when he arrested Plaintiff. (Compl. ¶¶ 17-18.) There are a few differences, however. At his trial, Plaintiff claimed that some of the officers tried to stop

17

Deputy Marshal Leo's alleged attack. (Ex. B at B-31.) Plaintiff's Complaint, however, alleges that the remaining Individual Defendants failed to help. (Compl. ¶¶ 20, 23.) Also, at his trial, Plaintiff admitted that when he saw the officers outside his front door they were wearing police vests, Plaintiff knew they were law enforcement officers, and Plaintiff ran because he knew he was a fugitive. (Ex. B at B-26, B-37 – B-38.) Plaintiff's Complaint alleges, on the other hand, that the first officer Plaintiff saw failed to identify himself as a police officer and that Plaintiff "ran with fear and for the safety of life, family, and property." (Compl. ¶ 14.)

Otherwise, the story that Plaintiff tells in his Complaint – that Deputy Marshal Leo beat Plaintiff repeatedly "like it was personal" – is the same story that Plaintiff told the jury at his criminal trial, and the same story the jury rejected beyond a reasonable doubt. The Complaint includes a laundry list of state and federal legal theories under which Plaintiff claims a right to relief, all of which rely on the same erroneous premise – that Deputy Marshal Leo used excessive force. (Compl. ¶¶ 28-29.) The Complaint fails to allege that Plaintiff has exhausted the state claims that can only be asserted against the United States. As explained below, Plaintiff's Complaint should be dismissed.

**ARGUMENT**

## I.     STANDARD OF REVIEW.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the Court must accept the allegations of the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.  *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).  The Court need not, however, credit "'bald assertions' or 'legal conclusions'" when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Generally, the Court should not look outside the pleadings when considering a motion to dismiss.  However, the Court may take judicial notice of the existence of publically filed documents – such as court dockets and transcripts – without converting a motion to dismiss into a motion for summary judgment.  *See* FED. R. EVID. 201; *see also Hubbs*, 360 F. Supp. 2d at 1075 n.2 (on a motion to dismiss, taking judicial notice of court transcripts to determine whether the complaint was barred by *Heck*); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").  Accordingly, the Court may look to the docket and transcript from Plaintiff's criminal trial.[3]

## II.     PLAINTIFF'S *BIVENS* CLAIMS ARE BARRED BY *HECK* AND SHOULD BE DISMISSED.

Where, as here, a plaintiff who has been convicted of a crime files a complaint alleging

---

[3]Even if the Court were to convert this Motion to a Motion for Summary Judgment, Plaintiff's Complaint should still be dismissed for the reasons discussed herein.  No amount of discovery would change the facts that Plaintiff's *Bivens* claims are barred by *Heck* and Plaintiff's state claims must be dismissed for lack of subject matter jurisdiction.

19

*Bivens* claims, the Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. Although *Heck* barred a § 1983 action by a state prisoner, the reasoning in *Heck* has been applied to bar *Bivens* claims like those made here. *See, e.g.*, *Banks v. 3311 East Carson St.*, No. 04-1771, 2006 WL 1843042, at *3 (W.D. Pa. June 29, 2006) (collecting cases). As explained below, *Heck* requires that Plaintiff's *Bivens* claims be dismissed.

    **A.**    **Plaintiff's *Bivens* Claims Are Barred By *Heck* Because A Judgment In Plaintiff's Favor Would Necessarily Imply The Invalidity Of Plaintiff's Conviction For Assaulting Deputy Marshal Leo.**

Plaintiff's claim that Deputy Marshal Leo used excessive force when he helped to arrest him is barred by *Heck* because, if that were true, it would mean that Deputy Marshal Leo was not acting in the performance of his official duties, and would necessarily imply the invalidity of Plaintiff's conviction for assaulting Deputy Marshal Leo while he was acting in the performance of his official duties. Plaintiff's defense at his criminal trial was that Deputy Marshal Leo used excessive force and that an officer who uses excessive force to arrest a person is not acting in the performance of his official duties. (*See* Ex B at B-97 – B-98); *see also United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) (explaining that evidence that an officer used excessive force is a defense to charges under 18 U.S.C. § 111 because "An officer who uses excessive force is not acting in good faith.").[4] As explained below, the jury rejected that defense.

_____

[4]*See also United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir. 1983) ("Of course, as a matter of defense [to charges under 18 U.S.C. § 111], an accused may present evidence that the officer's conduct was beyond the reasonable scope of his employment."); *United States v.*

Plaintiff testified that Deputy Marshal Leo tackled Plaintiff and began beating him "constantly," "for no reason, like it was personal." *See supra* at 15. Plaintiff's attorney argued to the jury that Deputy Marshal Leo was not acting in his official duty when Deputy Marshal Leo allegedly was "pounding" Plaintiff, who purportedly was "protecting" himself. *See id.* at 16. The court then instructed the jury that it could only convict Plaintiff if the jury found that each of the officers was acting in the performance of their official duties. *See id.* at 17. The jury convicted Plaintiff of all the charges, including the charge that Plaintiff assaulted Deputy Marshal Leo. *See id.*; (*see also* Ex. A.) By convicting Plaintiff the jury had to find that Deputy Marshal Leo *was* acting in the performance of his official duty and, *ipso facto*, that Deputy Marshal Leo *was not* using excessive force. A judgment here that Deputy Marshal Leo was using excessive force would therefore necessarily imply the invalidity of Plaintiff's conviction for assaulting Deputy Marshal Leo while he was in the performance of his official duty. Accordingly, Plaintiff's *Bivens* claims against Deputy Marshal Leo are barred by *Heck*.

This case presents facts nearly identical to those presented in *Robinson v. Lother*, No. 04 C 2382, 2006 WL 418664 (N.D. Ill. Feb. 15, 2006). In *Robinson*, a plaintiff who had been convicted in state court of resisting arrest subsequently brought a § 1983 action in federal court alleging that the police officer that she was convicted of resisting had used excessive force. *Id.* at *3. The defendant officer filed a motion to dismiss based on *Heck*. *Id.* at *1. The *Robinson* court then examined the transcript from the plaintiff's state court proceeding and found that the plaintiff had asserted in the state court that she was entitled to defend herself from what she

---

*Jennings*, 855 F. Supp. 1427, 1436 (M.D. Pa. 1994) (explaining that an accused may defend against assault charges under 18 U.S.C. § 111 by presenting evidence "that the use of unreasonable force [by the officers] is imminent").

alleged was excessive force. *Id.* at *2 ("In her state court criminal trial, the plaintiff raised the issue of self-defense . . . to what she claimed was . . . [the officer's] excessive use of force against her." The state court then instructed the jury to acquit if the jury found that the plaintiff was "defend[ing] [her]self against the imminent use of unlawful force." *Id.* The state court jury rejected the excessive force claim and convicted the plaintiff. Accordingly, the *Robinson* court barred the plaintiff's subsequent civil suit alleging excessive force. *Id.* at *4 ("Under the set of instructions presented by the court, the jury must have concluded that the plaintiff's use of force was not justified when deciding to reject her affirmative defense and find her guilty of resisting a peace officer."). Here, too, the Court should bar Plaintiff's *Bivens* claims alleging excessive force because those excessive force allegations were already heard and rejected by the jury during Plaintiff's criminal trial.[5]

This case is easily distinguishable from *Brown v. Pfaff*, No. 03-404-SLR, 2004 WL 422671 (D. Del. Mar. 3, 2004) and *Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997). In *Brown*,

---

[5] *See also City of Akron*, 418 F.3d at 684 ("Cummings' only defense to the assault charge against him would have been to claim that the officers used excessive force. Cummings did not make such an argument, instead pleading no contest to assaulting Vaughn. It is for this reason that *Heck* bars Cummings' Fourth Amendment excessive force claim from moving forward in the instant lawsuit."); *Wood v. Smith*, No. 99-1436-KI, 2001 WL 34047028, at *3 (D. Or. Apr. 5, 2001) ("Because the alleged unlawful beating took place at the same time as Wood's assault on the officers, the criminal jury's conviction would be undermined if a jury in this court determined that the officers used excessive force in light of Wood's self defense. Consequently, *Heck* precludes Wood's § 1983 claim of excessive force."); *Smith v. Mitchell*, No. 97-6115, 2000 WL 33256676, at *3 (D.N.J. Nov. 21, 2000) (dismissing the plaintiff's § 1983 action alleging excessive force because a judgment in the plaintiff's favor would "necessarily imply the invalidity of plaintiff's conviction for aggravated assault"); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996) ("Because self-defense is a justification defense to the crime of battery of an officer, Hudson's claim that [defendants] used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer.").

the plaintiff brought a § 1983 action alleging excessive force after having been convicted in state court of resisting arrest, and this Court held that *Heck* did not bar the plaintiff's action. *Id.* at *3. This Court noted that under Delaware law "a citizen may not resist arrest, even if the arrest is unlawful." *Id.* As a result, in *Brown*, the reasonableness of the officer's force was not at issue in the plaintiff's criminal trial. By contrast, here, the jury that sat for Plaintiff's criminal trial found that Deputy Marshal Leo's use of force was reasonable (by virtue of its finding that Deputy Marshal Leo was acting in the performance of his official duties).

Similarly, in *Nelson*, the plaintiff had been convicted in state court of resisting arrest and, under Pennsylvania law, to convict the plaintiff the jury had to find that the officer involved "was justified in using 'substantial force.'" *Nelson*, 109 F.3d at 145. The plaintiff's subsequent § 1983 excessive force claim was not barred, however, because "the fact that [the officer] was justified in using 'substantial force' to arrest Nelson does not mean that he was justified in using an excessive amount of force . . . ." *Id.* Accordingly, in both *Brown* and *Nelson*, whether the officers used excessive force was not submitted to the juries in the criminal cases. Here, on the other hand, whether Deputy Marshal Leo used excessive force (i.e., whether he was acting in the performance of his official duties) was submitted to the jury during Plaintiff's criminal trial, and that jury found that Deputy Marshal Leo did not use excessive force. Accordingly, while the plaintiffs' excessive force claims were allowed to go forward in *Brown* and *Nelson*, here Plaintiff's *Bivens* claims are barred by *Heck*.[6]

---

[6] Plaintiff's decision to forego a self-defense jury instruction during his criminal trial is also inconsistent with the excessive force claims he makes here. *See, e.g.*, *Hudson*, 98 F.3d at 873; *United States v. Heliczer*, 373 F.2d 241, 248 (2d Cir. 1967) (suggesting that a person can assert self-defense in response to charges under 18 U.S.C. § 111); *see also Span*, 970 F.2d at 581; *Lopez*, 710 F.2d at 1074; *Jennings*, 855 F. Supp. at 1436.

23

Because Plaintiff's *Bivens* claim against Deputy Marshal Leo is barred, Plaintiff's so-called "failure to protect" claims against the other Individual Defendants should also be dismissed. Because Plaintiff cannot make out an excessive force claim, he also cannot show that there were any acts from which he needed the protection of the other Individual Defendants. *See, e.g.*, *Holder v. Ivanjack*, 93 F. Supp. 2d 933, 941 (N.D. Ill. 2000) (finding excessive force claim barred by *Heck* and also dismissing failure-to-protect claim: "However, the defendants argue that Holder has failed to establish that DeRosa and Rodriquez failed to protect him because there were no unlawful acts from which he needed protection. The court agrees."); *see also Jackson v. Mills*, No. 96-3751, 1997 WL 570905, at *5 n.10 (E.D. Pa. Sept. 4, 1997) (explaining that a "failure to intervene [claim] is not a distinct claim but rather a theory under which an otherwise passive defendant may be jointly liable for the conduct of another").

Plaintiff's failure to protect claims against the other Individual Defendants should also be dismissed because – even assuming Plaintiff could make out an excessive force claim against Deputy Marshal Leo – Plaintiff fails to allege how the other Individual Defendants failed to protect him. Notably, Plaintiff fails to allege that Officers Daily, Bowers, Fletcher and Hahn were even present when Plaintiff was allegedly beaten by Deputy Marshal Leo. For this reason also, Plaintiff's failure to protect claims should be dismissed.

**B.      Plaintiff's *Bivens* Claims Are Also Barred By *Heck* Because Plaintiff Makes Allegations That, If Believed, Would Necessarily Imply The Invalidity Of Plaintiff's Convictions.**

Plaintiff's *Bivens* claims are also barred by *Heck* because the allegations that the first officer Plaintiff saw failed to identify himself as a police officer and that Plaintiff then "ran with fear and for the safety of life, family, and property" (Compl. ¶ 14), are flatly contradicted by

24

Plaintiff's testimony at his criminal trial (Ex. B at B-26, B-37 – B-38) and, in any event, if

believed those allegations would necessarily imply the invalidity of Plaintiff's convictions.

The Court of Appeals for the Third Circuit has held that a defendant has an affirmative

defense to charges under 18 U.S.C. § 111 (2006) if he "neither knows nor should know that he is

being arrested and reasonably believes that he is being subjected to a hostile attack against his

person." *Goodwin*, 440 F.2d at 1156.  Accordingly, had Plaintiff testified at his criminal trial,

and had the jury then believed, that the officers did not identify themselves and Plaintiff ran for

his safety, Plaintiff could not have been convicted.  That Plaintiff did not pursue that defense at

his trial is irrelevant.  *Cf. City of Akron*, 418 F.3d at 684 (finding the plaintiff's civil suit barred

by *Heck* even though the plaintiff pled guilty).

Also irrelevant is the possibility that Plaintiff *could have* drafted his Complaint and left

out the allegations that the officers did not identify themselves and that Plaintiff ran for his

safety.  The Seventh Circuit has explained that a plaintiff "is the master of his ground."  *Okoro*,

324 F.3d at 490.  If a plaintiff "makes allegations that are inconsistent with the conviction's

having been valid, *Heck* steps in and bars his civil suit."  *Id.* (citing *Edwards v. Balisok*, 520 U.S.

641, 646-48 (1997)).  The "theoretical possibility" that the plaintiff could have stated a claim

without the inconsistent allegations is not relevant.  *Id.*  Thus, because Plaintiff made allegations

in his Complaint that, if believed, would constitute an affirmative defense under *Goodwin* and

undermine his convictions, Plaintiff's *Bivens* claims must be dismissed.

Plaintiff's allegations that he immediately ran away from the officers and "fell and curled

up in a ball position" where he was beaten by Deputy Marshal Leo (Compl. ¶¶ 16-17), if

believed, would also necessarily imply the invalidity of Plaintiff's convictions.  If Plaintiff had

simply run away and defended himself he could not have been convicted of assaulting the

officers. For this additional reason, Plaintiff's *Bivens* claims are barred by *Heck*.[7]

## III.    PLAINTIFF'S STATE LAW CLAIMS AGAINST THE UNITED STATES SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Plaintiff's state law claims against the United States should be dismissed pursuant to Fed.

R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The Federal Tort Claims Act

("FTCA") is the exclusive means to hold the United States liable in tort. 28 U.S.C. § 2679(b)(1)

(2006); *see also Couden v. Duffy*, 446 F.3d 483, 498 n.10 (3d Cir. 2006). Plaintiff's FTCA

claims should be dismissed because Plaintiff does not allege that he exhausted his administrative

remedies, as the FTCA requires (nor could Plaintiff make any such allegation). *See, e.g.*, *Livera*,

879 F.2d at 1194-95 (3d Cir. 1989) ("We agree with the district court here that the [plaintiff]

failed to carry the burden of establishing that even the rudiments of an administrative claim were

filed."); *Daniels v. Guthrie Clinic Ltd.*, No. 3:CV-96-0058, 1996 WL 806634, at *1 (M.D. Pa.

Dec. 27, 1996); *Biase v. Kaplan*, 852 F. Supp. 268, 283 (D.N.J. 1994) (collecting cases).

Plaintiff's failure to exhaust his administrative remedies deprives the Court of subject matter

jurisdiction, and is a defect that cannot be waived by the government. *See, e.g., Livera*, 879 F.2d

at 1194; *Obeng v. De. State Police*, No. 04-1248 (GMS), 2005 WL 1592951, at *2 (D. Del. July

7, 2005); *D'Alessandro v. EEOC*, 215 F. Supp. 2d 419, 422 (D. Del. 2002). Accordingly, those

---

[7]For the same reasons that Plaintiff's *Bivens* claims are barred by *Heck*, those claims are also subject to dismissal based on issue preclusion. *Cf. Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) (explaining that the *Heck* "principle is another manifestation of the doctrine of issue preclusion or collateral estoppel, i.e., the policy of finality that prevents the collateral attack of a criminal conviction once the matter has been litigated"); *see also infra* at 27 n.8.

claims must be dismissed.[8]

_____

[8]Even if Plaintiff had exhausted his administrative remedies, Plaintiff's state law tort claims would still be subject to dismissal based on issue preclusion. The preclusive effect of Plaintiff's federal criminal conviction is determined by federal law. *See Paramount Aviation Corp. v. Augusta*, 178 F.3d 132, 135 (3d Cir. 1999) ("the preclusive effect of a judgment is determined by the preclusion law of the issuing court – in this case, a federal court"). Issue preclusion arises where: "(1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). Here, all the elements for issue preclusion are met.

All of Plaintiff's state law claims arise from the same erroneous premise as his federal law claims, namely, that Deputy Marshal Leo used excessive force when he arrested Plaintiff. As described above, that identical issue – whether Deputy Marshal used excessive force – was decided by the jury during Plaintiff's criminal trial. That jury found – unanimously and beyond a reasonable doubt – that Deputy Marshal Leo did not use excessive force. Plaintiff had a full and fair opportunity to litigate that issue. The centerpiece of Plaintiff's criminal defense was his argument that Deputy Marshal Leo was not acting in the performance of his official duties when he allegedly was "pounding" Plaintiff. The jury rejected that argument, and Plaintiff's convictions remain valid. Under federal law, "the pendency of an appeal [such as Plaintiff's] does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel." *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983) (quotations omitted). Accordingly, issue preclusion denies Plaintiff another chance to try and prove that Deputy Marshal Leo used excessive force. Thus, even if Plaintiff had exhausted his state law claims, those claims would still have to be dismissed.

27

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) for failure to state a claim.

DATED:  January 12, 2007.

Respectfully Submitted,

COLM F. CONNOLLY
United States Attorney

By:_____/s/ Seth M. Beausang_____
Seth M. Beausang (I.D. No. 4071)
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suit 700
Wilmington, DE 19801
(302) 573-6277

28

## CERTIFICATE OF SERVICE

I, Seth M. Beausang, hereby attest under penalty of perjury that on this 12th day of January, 2007, I caused two copies of the Individual Defendants' Motion to Dismiss, Opening Brief in Support Thereof and Proposed Order to be served on the Plaintiff by First Class Mail at the following address:

Nelson Lora-Pena
I.D. No. 03883-070
U.S.P. Canaan
P.O. Box 300
Waymart, PA 18742

and a copy to be served on the following counsel at the following address:

Stephani J. Ballard
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801


                                          _/s/ Seth M. Beausang_____
                                          Seth M. Beausang (DE I.D. No. 4071)

EXHIBIT A

APPEAL, CLOSED

# U.S. District Court
## District of Delaware (Wilmington)
## CRIMINAL DOCKET FOR CASE #: 1:05-cr-00047-KAJ All Defendants

| | |
|---|---|
| Case title: USA v. Lora-Pena | Date Filed: 05/12/2005 |
| Magistrate judge case number: 1:05-mj-00072-MPT | Date Terminated: 01/03/2006 |

Assigned to: Honorable Kent A. Jordan

Appeals court case number: '06-1077'
'USCA'

### Defendant

**Nelson Lora-Pena** (1)                    represented by    **A. Charles Peruto, Jr.**
*TERMINATED: 01/03/2006*                                     2101 Pine Street
                                                             Philadelphia, PA 19103
                                                             215-735-1010
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: Retained*

                                                             **Eugene J. Maurer, Jr.**
                                                             Eugene J. Maurer, Jr.
                                                             1201-A King Street
                                                             Wilmington, DE 19801
                                                             302-652-7900
                                                             *TERMINATED: 04/19/2005*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: Retained*

                                                             **Penny Marshall**
                                                             Federal Public Defender's Office
                                                             First Federal Plaza, Suite 110
                                                             704 King Street
                                                             Wilmington, DE 19801
                                                             (302) 573-6010
                                                             Email: ecf_pm@msn.com
                                                             *TERMINATED: 04/13/2005*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: Public Defender or*
                                                             *Community Defender Appointment*

                                                             **William J. Rhodunda, Jr.**
                                                             Oberly & Jennings

800 Delaware Ave., Suite 901
P.O. Box 2054
Wilmington, DE 19899-2054
(302) 576-2000
Email: wrhodunda@ojlaw.com
*TERMINATED: 09/06/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Pending Counts**

18:111(a)(1) and (b) - ASSAULT OF A
FEDERAL OFFICER - ( COUNTS I
THRU III - 4/9/2005 )
(1-3)

**Disposition**

SENTENCE OF THE COURT:
IMPRISONMENT- 87 MONTHS
(CONCURRENT); SUPERVISED
RELEASE - 36 MONTHS
(CONCURRENT); SPECIAL
ASSESSMENT - $300.00.

18:111(a)(1) - ASSAULT OF A
FEDERAL OFFICER - ( COUNT IV -
4/9/2005 )
(4)

SENTENCE OF THE COURT:
IMPRISONMENT- 12 MONTHS
(CONCURRENT); SUPERVISED
RELEASE - 12 MONTHS
(CONCURRENT); SPECIAL
ASSESSMENT - $25.00.

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

18:111(b) - FORCIBLY
ASSAULTING A DEPUTY UNITED
STATES MARSHALL WHILE HE
WAS ENGAGED IN THE
PERFORMANCE OF HIS DUTIES

**Disposition**

**Plaintiff**

**USA**

represented by **April Byrd**
U.S. Attorney's Office
The Nemours Building

1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
*TERMINATED: 08/23/2005*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard G. Andrews**
U.S. Attorney's Office
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277
Email: Richard.Andrews2@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/09/2005 | | Arrest of Nelson Lora-Pena (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/11/2005 | 1 | CRIMINAL COMPLAINT by United States Marshal's Service, sworn to before the Honorable Mary Pat Thynge ( Original Complaint Sealed; held in the Clerk's office ). (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/11/2005 | 2 | REDACTED VERSION of [1] Criminal Complaint by USA as to Nelson Lora-Pena (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/11/2005 | | Minute Entry for proceedings held before Judge Mary Pat Thynge :Initial Appearance as to Nelson Lora-Pena held on 4/11/2005; Deft. was present with counsel ( Christopher S. Koyste, Esq., from the FPD's office wasappointed as counsel ); Govt. filed a Motion For A Detention Hearing; Granted;Preliminary and Detention Hearing set for 4/14/05 at 1:00 pm. (Tape #05-22.) (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/11/2005 | 4 | MOTION to Detain Pending Trial by USA as to Nelson Lora-Pena. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/11/2005 | 6 | ORDER OF TEMPORARY DETENTION as to Nelson Lora-Pena. Detention Hearing set for 4/14/2005 01:00 PM in Courtroom 6C before Honorable Mary Pat Thynge.. Signed by Judge Mary Pat Thynge on 4/11/05. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/11/2005 | | Set Hearings as to Nelson Lora-Pena: Detention Hearing set for 4/14/2005 01:00 PM in Courtroom 6C before Honorable Mary Pat Thynge. Preliminary Examination set for 4/14/2005 01:00 PM in Courtroom 6C before Honorable Mary Pat Thynge. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |

| 04/12/2005 | 5 | Arrest Warrant Returned Executed on 4/11/05. as to Nelson Lora-Pena. ( Sealed. Original held in the clerk's office ). (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/12/2005 | 7 | REDACTED VERSION of [5] Arrest Warrant Returned Executed as to Nelson Lora-Pena (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/13/2005 | | Attorney update in case as to Nelson Lora-Pena. Attorney Penny Marshall terminated. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/13/2005 | | Attorney update in case as to Nelson Lora-Pena. Attorney Eugene J. Maurer, Jr., Esq., for Nelson Lora-Pena added as retained counsel. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/14/2005 | 3 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Nelson Lora-Pena. Appointment of Penny Marshall, Esq., for Nelson Lora-Pena . Signed by Judge Mary Pat Thynge on 4/11/05. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/14/2005) |
| 04/19/2005 | | Reset Hearings as to Nelson Lora-Pena: Detention Hearing set for 4/20/2005 02:00 PM in Courtroom 6C before Honorable Mary Pat Thynge. Preliminary Examination set for 4/20/2005 02:00 PM in Courtroom 6C before Honorable Mary Pat Thynge. ( Per Calendar Notice; Date setwhen Mr. Maurer intended to enter his appearance ). (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/20/2005) |
| 04/19/2005 | | Attorney update in case as to Nelson Lora-Pena. Attorney Eugene J. Maurer, Jr terminated. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/20/2005) |
| 04/20/2005 | | Minute Entry for proceedings held before Judge Mary Pat Thynge:Preliminary Examination as to Nelson Lora-Pena held on 4/20/2005; Deft. was present with counsel ( William Rhodunda, Jr., Esq., entered his appearance as retained counsel ); Probable Cause Found; Deft. shall await futher action by the court. (Tape #05-24.) (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/21/2005) |
| 04/20/2005 | 8 | ORDER of Probable Cause as to Nelson Lora-Pena: Defendant is ordered to await further action by the Court (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/21/2005) |
| 04/20/2005 | | Minute Entry for proceedings held before Judge Mary Pat Thynge :Detention Hearing as to Nelson Lora-Pena held on 4/20/2005;Deft. was present with counsel; Govt.'s motion for detention Granted; Deft. ordered detained pending trial ( a written order will follow ). (Tape #05-24, 05-25.) (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/21/2005) |
| 04/20/2005 | | ORAL ORDER as to Nelson Lora-Pena re 4 MOTION to Detain Pending Trial filed by USA, . Issued by Judge Mary Pat Thynge on 4/20/05. ( a written order will follow ) (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/21/2005) |
| 04/20/2005 | | Attorney update in case as to Nelson Lora-Pena. Attorney William J. |

| | | |
|---|---|---|
| | | Rhodunda, Jr., Esq., for Nelson Lora-Pena added as retained counsel. (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/28/2005) |
| 04/25/2005 | 9 | ORDER OF DETENTION as to Nelson Lora-Pena . Signed by Judge Mary Pat Thynge on 4/25/05. ( follows oral order ) (kjk, ) [1:05-mj-00072-MPT] (Entered: 04/25/2005) |
| 05/12/2005 | | CORRECTING ENTRY: deleted DI#10, order of detention docketed twice on 4/25/05. (kjk, ) [1:05-mj-00072-MPT] (Entered: 05/12/2005) |
| 05/12/2005 | 10 | INDICTMENT as to Nelson Lora-Pena (1) count(s) 1-3, 4. ( Original SEALED - to be held in the clerk's office ) (kjk, ) (Entered: 05/12/2005) |
| 05/12/2005 | 11 | REDACTED VERSION of [10] Indictment by USA as to Nelson Lora-Pena (kjk, ) (Entered: 05/12/2005) |
| 05/17/2005 | | Set Hearings as to Nelson Lora-Pena: Arraignment set for 5/19/2005 01:00 PM in Courtroom 6C before Honorable Mary Pat Thynge. (kjk, ) (Entered: 05/17/2005) |
| 05/18/2005 | | Case assigned to Judge Kent A. Jordan, as to Nelson Lora-Pena. Please include the initials of the Judge (KAJ) after the case number on all documents filed. (rjb, ) (Entered: 05/18/2005) |
| 05/19/2005 | | Minute Entry for proceedings held before Judge Mary Pat Thynge :Arraignment as to Nelson Lora-Pena (1) Count 1-3,4 held; Deft. was present with counsel; Deft. entered a plea of NOT GUILTY to the Indictment (Tape #05-31.) (eew) (Entered: 05/20/2005) |
| 06/09/2005 | 12 | ORDER as to Nelson Lora-Pena: Scheduling Conference set for 6/14/2005 02:30 PM in Chambers before Honorable Kent A. Jordan. Signed by Judge Kent A. Jordan on 6/9/05. (rwc, ) (Entered: 06/09/2005) |
| 06/14/2005 | | Minute Entry for proceedings held before Judge Kent A. Jordan :In-Chambers Scheduling Conference as to Nelson Lora-Pena held on 6/14/2005. (Court Reporter B. Gaffigan.) (rwc, ) (Entered: 06/14/2005) |
| 06/14/2005 | 13 | STENO NOTES of Scheduling Conference held on 6/14/05 before Judge Jordan. Court Reporter: B. Gaffigan. (Notes on file in Clerk's Office) (rwc, ) (Entered: 06/14/2005) |
| 06/15/2005 | 14 | SCHEDULING ORDER as to Nelson Lora-Pena : Pre-Trial Motions due by 6/17/2005; Answering Brief due 7/1/05; Reply Brief due 7/11/05. Pretrial Conference set for 9/13/2005 10:00 AM in Chambers before Honorable Kent A. Jordan. Motions in limine due 8/22/05; Answering Briefs due 8/29/05; Reply Briefs due 9/2/05; Jury Trial (1-day) set for 9/15/2005 09:30 AM in Courtroom 6A before Honorable Kent A. Jordan. Signed by Judge Kent A. Jordan on 6/14/05. (rwc, ) (Entered: 06/15/2005) |
| 06/15/2005 | 15 | Letter ( fax copy ) to Clerk of Court from William J. Rhodunda, Esq. regarding Tape Request. (kjk, ) (Entered: 06/15/2005) |
| 06/17/2005 | 16 | MOTION to Compel by Nelson Lora-Pena. (Attachments: # 1 Exhibit # 2 |

| | | |
|---|---|---|
| | | Text of Proposed Order # 3 Certificate of Service)(Rhodunda, William) (Entered: 06/17/2005) |
| 07/01/2005 | 17 | RESPONSE to Motion by USA as to Nelson Lora-Pena re 16 MOTION to Compel (Andrews, Richard) (Entered: 07/01/2005) |
| 07/08/2005 | 18 | REPLY TO RESPONSE to Motion by Nelson Lora-Pena re 16 MOTION to Compel, 17 Response to Motion *Reply to Government's Response to Defendant's Motion to Compel* (Attachments: # 1 Certificate of Service) (Rhodunda, William) (Entered: 07/08/2005) |
| 08/22/2005 | 19 | Proposed Jury Instructions by USA as to Nelson Lora-Pena (Andrews, Richard) (Entered: 08/22/2005) |
| 08/22/2005 | 20 | Proposed Voir Dire by USA as to Nelson Lora-Pena (Andrews, Richard) (Entered: 08/22/2005) |
| 08/23/2005 | 21 | NOTICE OF SUBSTITUTION OF COUNSEL: Entry of appearance of attorney Richard G. Andrews. Attorney April Byrd terminated in case as to Nelson Lora-Pena. (Andrews, Richard) (Entered: 08/23/2005) |
| 09/02/2005 | 22 | Letter to The Honorable Kent A.Jordan from William J. Rhodunda, Jr. regarding defendant obtaining new counsel. (Rhodunda, William) (Entered: 09/02/2005) |
| 09/02/2005 | 23 | STIPULATION for Substitution of Counsel - A. Charles Peruto to replace William J. Rhodunda, Jr., as counsel for defendant. (Attachments: # 1 Certifiate of Service)(Rhodunda, William) Modified on 9/2/2005 (rwc, ). (Entered: 09/02/2005) |
| 09/06/2005 | | SO-ORDERED - 23 Substitution of Counsel as to Nelson Lora-Pena . Signed by Judge Kent A. Jordan on 9/6/05. (rwc, ) (Entered: 09/06/2005) |
| 09/07/2005 | 24 | ORDER as to Nelson Lora-Pena : Pretrial Conference reset for 9/9/2005 03:00 PM in Chambers before Honorable Kent A. Jordan. Signed by Judge Kent A. Jordan on 9/7/05. (rwc, ) (Entered: 09/07/2005) |
| 09/09/2005 | | Minute Entry for proceedings held before Judge Kent A. Jordan :Pretrial Conference as to Nelson Lora-Pena held on 9/9/2005. (Court Reporter B. Gaffigan.) (rwc, ) (Entered: 09/09/2005) |
| 09/09/2005 | | ORAL ORDER - issued denying 16 Motion to Compel as to Nelson Lora-Pena . Signed by Judge Kent A. Jordan on 9/9/05. (rwc, ) Modified on 9/9/2005 (rwc, ). (Entered: 09/09/2005) |
| 09/12/2005 | 25 | STENO NOTES for 9/9/05 filed by Court Reporter: B. Gaffigan. (Notes on file in Clerk's Office) (rwc, ) (Entered: 09/12/2005) |
| 09/15/2005 | 26 | Voir Dire Questions as to Nelson Lora-Pena read in open Court. (rwc, ) (Entered: 09/15/2005) |
| 09/15/2005 | 27 | Jury Instructions as to Nelson Lora-Pena read in open Court. (rwc, ) (Entered: 09/15/2005) |
| 09/15/2005 | | CORRECTING ENTRY: Change of Plea Order docketed in incorrect |

| | | |
|---|---|---|
| | | case - removed from docket by docketing clerk. (rwc, ) (Entered: 09/15/2005) |
| 09/15/2005 | | Minute Entry for proceedings held before Judge Kent A. Jordan :Jury Trial (Day #1) as to Nelson Lora-Pena held on 9/15/2005 (Court Reporter B. Gaffigan.) (rwc, ) (Entered: 09/15/2005) |
| 09/16/2005 | 28 | Jury Instructions, as read in open court, as to Nelson Lora-Pena (cas) (Entered: 09/16/2005) |
| 09/16/2005 | 29 | STENO NOTES for 9/15/05 filed by Court Reporter: B. Gaffigan. (Notes on file in Clerk's Office) (rwc, ) (Entered: 09/19/2005) |
| 09/16/2005 | 30 | STENO NOTES for 9/16/05 filed by Court Reporter: B. Gaffigan. (Notes on file in Clerk's Office) (rwc, ) (Entered: 09/19/2005) |
| 09/16/2005 | | Minute Entry for proceedings held before Judge Kent A. Jordan :Jury Trial (Day# 2) as to Nelson Lora-Pena held on 9/16/2005 (Court Reporter B. Gaffigan.) (rwc, ) (Entered: 09/19/2005) |
| 09/16/2005 | 31 | SEALED JURY VERDICT as to Nelson Lora-Pena - Guilty on Counts 1-3,4. (rwc, ) (Entered: 09/19/2005) |
| 09/16/2005 | 32 | REDACTED VERSION of 31 Jury Verdict as to Nelson Lora-Pena. (rwc, ) (Entered: 09/19/2005) |
| 09/16/2005 | 33 | Jury Notes (SEALED) as to Nelson Lora-Pena (Notes on file in Clerk's Office) (rwc, ) (Entered: 09/19/2005) |
| 09/19/2005 | 34 | ORDER - directing that jurors be provided lunch for 9/16/05. (cc: Finance) . Signed by Judge Kent A. Jordan on 9/19/05. (rwc, ) (Entered: 09/19/2005) |
| 09/26/2005 | 35 | ORDER SCHEDULING SENTENCING as to Nelson Lora-Pena. Sentencing set for 12/20/2005 03:00 PM in Courtroom 6A before Honorable Kent A. Jordan. Signed by Judge Kent A. Jordan on 9/26/05. (rwc, ) (Entered: 09/26/2005) |
| 12/05/2005 | 36 | Letter to Judge K. Jordan dated Nov. 22, 2005 from N. Lora Pena regarding upcoming sentencing. (cas) (Entered: 12/05/2005) |
| 12/20/2005 | 37 | STENO NOTES for 12/20/05 filed by Court Reporter: B. Gaffigan. (Notes on file in Clerk's Office) (rwc, ) (Entered: 12/20/2005) |
| 12/20/2005 | | Minute Entry for proceedings held before Judge Kent A. Jordan :Sentencing held on 12/20/2005 AS TO Nelson Lora-Pena, Re: Count(s) 1-3, SENTENCE OF THE COURT: IMPRISONMENT- 87 MONTHS (CONCURRENT); SUPERVISED RELEASE - 36 MONTHS (CONCURRENT); Re: Count 4, SENTENCE OF THE COURT: IMPRISONMENT- 12 MONTHS (CONCURRENT); SUPERVISED RELEASE - 12 MONTHS (CONCURRENT); SPECIAL ASSESSMENT - $325.00. (Court Reporter B. Gaffigan.) (rwc, ) (Entered: 12/21/2005) |
| 12/20/2005 | 44 | TRANSCRIPT of Proceedings held on 12/20/05 before Judge Jordan. |

| | | Court Reporter: B. Gaffigan. (Transcript on file in Clerk's Office) (rwc, ) (Entered: 01/31/2006) |
|---|---|---|
| 01/03/2006 | 38 | JUDGMENT as to Nelson Lora-Pena, Count(s) 1-3, SENTENCE OF THE COURT: IMPRISONMENT- 87 MONTHS (CONCURRENT); SUPERVISED RELEASE - 36 MONTHS (CONCURRENT; Re: Count (s) 4, SENTENCE OF THE COURT: IMPRISONMENT- 12 MONTHS (CONCURRENT); SUPERVISED RELEASE - 12 MONTHS (CONCURRENT); SPECIAL ASSESSMENT - $325.00. Signed by Judge Kent A. Jordan on 1/3/06. (rwc, ) (Entered: 01/03/2006) |
| 01/05/2006 | 39 | NOTICE OF APPEAL of 38 Judgment,. Appeal filed by Nelson Lora-Pena. Time of Filing: 2:51 PM. (Rhodunda, William) (Entered: 01/05/2006) |
| 01/06/2006 | | USCA Appeal (Third Circuit) Fees received: $ 255, receipt number 141761 as to Nelson Lora-Pena re 39 Notice of Appeal - Final Judgment. (mwm, ) (Entered: 01/06/2006) |
| 01/10/2006 | 40 | NOTICE of Docketing Record on Appeal from USCA for the Third Circuit re 39 Notice of Appeal - Final Judgment filed by Nelson Lora-Pena,. USCA Case Number 06-1077. USCA Case Manager: Chiquita Dyer. (DOCUMENT IS RESTRICTED AND CAN ONLY BE VIEWED BY COURT STAFF) (cd, ) (Entered: 01/10/2006) |
| 01/18/2006 | 41 | TRANSCRIPT REQUEST by Nelson Lora-Pena for proceedings held on September 15 and 16, 2005 and December 20, 2005 before Judge Kent A. Jordan, re 39 Notice of Appeal - Final Judgment. (Rhodunda, William) (Entered: 01/18/2006) |
| 01/31/2006 | 42 | TRANSCRIPT of Proceedings held on 9/15/05 before Judge Jordan. Court Reporter: B. Gaffigan. (Transcript on file in Clerk's Office) (rwc, ) (Entered: 01/31/2006) |
| 01/31/2006 | 43 | TRANSCRIPT of Proceedings held on 9/16/05 before Judge Jordan. Court Reporter: B. Gaffigan. (Transcript on file in Clerk's Office) (rwc, ) (Entered: 01/31/2006) |
| 02/06/2006 | 45 | Judgment Returned Executed as to Nelson Lora-Pena on 1/23/06 at Waymant, PA. (cas) (Entered: 02/06/2006) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 01/11/2007 17:35:47 | | |
| PACER Login: | us1292 | Client Code: |
| Description: | Docket Report | Search Criteria: | 1:05-cr-00047-KAJ Start date: 1/1/1970 End date: 1/11/2007 |
| Billable | 5 | Cost: | 0.40 |

**Pages:**