IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NELSON LORA-PENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-442-SLR |
| | ) |
| UNITED STATES, SUP. DEPUTY U.S. | ) |
| MARSHAL ROBERT DENNEY, | ) |
| DEPUTY U.S. MARSHAL JACK | ) |
| LEO, DEPUTY U.S. MARSHAL | ) |
| WILLIAM DAVID, U.S. MARSHAL | ) |
| DAVID THOMAS, TASK FORCE | ) |
| OFFICER FLETCHER, TASK FORCE | ) |
| OFFICER DAILY, TASK FORCE | ) |
| OFFICER BOWERS, and STATE | ) |
| POLICE TROOPER HAHN, | ) |
| | ) |
| Defendants. | ) |

Nelson Lora-Pena, United States Penitentiary-Canaan, Waymart, Pennsylvania. Pro se plaintiff.

Seth Madison Beausang, Esquire, United States Attorney's Office, Wilmington, Delaware. Counsel for defendants.

**MEMORANDUM OPINION**

Dated: July 16, 2007
Wilmington, Delaware

ROBINSON, Judge

## I. **INTRODUCTION**

On July 20, 2006, Nelson Lora-Pena ("plaintiff"), a pro se plaintiff, filed the

present action against the Federal Bureau of Investigation ("FBI"); the United States

Marshal Service ("USMS"); the Fugitive Apprehension Task Force ("FATF");

Supervisory Deputy U.S. Marshal Robert Denney ("Denney"); Deputy U.S. Marshal Jack

Leo ("Leo"); Deputy U.S. Marshal William David ("David"); U.S. Marshal David Thomas

("Thomas");[1] Task Force Officer Fletcher ("Fletcher"); Task Force Officer Daily ("Daily");

Task Force Officer Bowers ("Bowers"); and State Police Trooper Hahn ("Hahn"),

alleging violations of both state and federal law. (D.I. 1) On September 22, 2006, the

court dismissed the FBI, the USMS, and the FATF from the complaint by reason of

sovereign immunity pursuant to 28 U.S.C. § 1915A(b)(2).[2] (D.I. 4) On February 16,

2007, upon a motion by the United States ("U.S."), the court substituted the U.S. for

Denny, Leo, David, Thomas, Fletcher, Daily, Bowers, and Hahn (collectively, the

"individual defendants") as the sole defendant with regard to plaintiff's state tort claims;

the individual defendants were retained as parties, however, in connection with

plaintiff's constitutional claims. (D.I. 25)

---

[1]Although identified in the complaint as "Thomas Davis," this individual is actually
David Thomas, the United States Marshal for the District of Delaware. (See D.I. 18, ex.
A at 1 n.1; D.I. 25 at 1 n.1)

[2]Upon review of a complaint in a civil action wherein "a prisoner seeks redress
from a governmental entity or officer or employee of a governmental entity," "the court
shall identify cognizable claims or dismiss . . . any portion of the complaint" if that
portion "seeks monetary relief from a defendant who is immune from such relief." 28
U.S.C. § 1915A(b)(2).

Plaintiff's complaint alleges that Leo used excessive force against him in violation of the Eighth Amendment to the United States Constitution and that the individual defendants failed to protect him from Leo's use of excessive force.[3] (D.I. 1) Plaintiff also claims that his Fifth and Fourteenth Amendment rights to due process, "including the right to be free from unjustified and excessive force utilized by federal, state, or local police," were violated. (Id. at 6) Finally, plaintiff's complaint alleges ten state tort claims under Delaware law.[4] (Id.) Plaintiff requests that his medical expenses be paid by the responsible parties and seeks damages totaling over \$28 million. (Id. at 6-7) The court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1331; 1343(a)(3), (4); and 1367. Presently before the court are defendants' motion to dismiss for failure to state a claim and lack of subject matter jurisdiction (D.I. 19),[5] and plaintiff's

---

[3]The court will then analyze this claim under the Fourth Amendment, which "governs a free citizen's claim that law enforcement officers used excessive force in the course of making an arrest." Graham v. Connor, 490 U.S. 386, 388 (1989).

[4]Specifically, plaintiff alleges excessive use of force; assault and battery; malicious arrest and procedure; abuse of process; negligence; gross negligence; "misconduct of federal, state, or local rules and regulations"; "public humiliation of the private parts"; "violations of the FBI and USM Service laws, rules and regulations"; and violation of the Constitution of the United States. (D.I. 1 at 6)

[5]Plaintiff has withdrawn all of his state law tort claims. (D.I. 31 at 9) Plaintiff concedes that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., is the exclusive means by which the United States may be held liable in tort. The FTCA, however, requires that a plaintiff allege complete exhaustion of administrative remedies before a federal district court can have subject matter jurisdiction over such tort claims. See Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1194-95 (3d Cir. 1989). Plaintiff concedes that, due to his failure to exhaust his administrative remedies, he is precluded from bringing these state tort claims. (D.I. 31 at 9) Because this court lacks subject matter jurisdiction over plaintiff's state law claims, defendants' motion to dismiss plaintiff's claims against the U.S. is granted under Fed. R. Civ. P 12(b)(1). (D.I. 19)

motion for appointment of counsel. (D.I. 27)[6]

## II. BACKGROUND

On April 9, 2005, plaintiff was arrested at his home by members of the USMS FATF. (D.I. 22 at A-85) Plaintiff, a fugitive, was the subject of an outstanding arrest warrant for violation of supervised release. (Id. at A-211 to A-212) Plaintiff and the individual defendants have put forth vastly different accounts of what happened before, during, and after the arrest; however, on September 16, 2005, a jury convicted plaintiff of forcibly assaulting, resisting, and interfering with four of the officers who arrested him: Denney, David, Thomas, and Leo ("the officers"). (Id. at B-138 to B-139)

Plaintiff's complaint alleges that, on April 9, 2005, at "about 1:30 P.M.," David appeared at plaintiff's door, weapon in hand, and gestured at plaintiff to leave the house, all without identifying himself as a police officer.[7] (D.I. 1 ¶¶ 12, 14) Plaintiff ran to the back door "for fear of his life" and found that officers had completely surrounded the house. (Id. at ¶¶ 15-16) Plaintiff alleges that, after the officers entered his house,

---

[6]Plaintiff has filed three other motions that are currently pending: (1) a request for entry of default judgment against the individual defendants (D.I. 23); (2) a motion for extension of time to file a response to the motion to dismiss (D.I. 27); and (3) a motion to exclude from consideration a letter filed with the court by defendants on May 8, 2007 (D.I. 39). The first two motions are denied as moot. The third motion is denied under D. Del. LR 7.1.2(b) (effective June 30, 2007), which permits "the citation of subsequent authorities" after briefing has closed. Defendants' May 8 letter, which alerts the court to a recent Third Circuit decision affirming plaintiff's criminal conviction (D.I. 38), was properly filed under the local rules.

[7]During plaintiff's criminal trial, however, he admitted that he was completely aware that the individual who came to his door was a police officer. (D.I. 22 at B-26 to B-27, B-38) Furthermore, plaintiff admitted to panicking because he had been "on the run for ten years." (Id. at B-26)

3

he was tackled by Leo, who was "holding a live weapon and never identif[ied] himself as a federal agent." (Id. at ¶ 17) Plaintiff describes being "repeatedly punched and kicked" after having fallen to the floor and having "curled up in a ball" in order to protect himself from the blows. (Id. at ¶¶ 17-18) Plaintiff alleges that he received a continuing barrage of punches and kicks from Leo after he already had been subdued. (Id.) The next thing plaintiff claims to remember is being knocked unconscious and waking up in transit to Christiana Hospital.[8] (Id. at ¶ 19) During the altercation, plaintiff sustained a broken eye socket, broken jaw, facial scars, disfigured lip, and a chipped tooth. (Id. at ¶ 21) Plaintiff also claims to have suffered severe humiliation and emotional distress, along with intense pain. (Id. at ¶¶ 21-22)

At plaintiff's criminal trial, the officers testified that plaintiff had both resisted arrest and assaulted them. (D.I. 22 at A-117 to A-120, A-178 to A-179, A-198 to A-200, A-220 to A-222) Leo described plaintiff as "scratching," "clawing," and "punching" him, as well as using his two pit bulls to assault Denney and David. (Id. at A-220 to A-222) According to Leo, plaintiff was trying to wrestle away his rifle, which caused a shot to be discharged; this was corroborated by the other officers' testimony. (Id. at A-117, A-178, A-225) Leo admitted to striking plaintiff, but only to an extent necessary to protect his firearm and subdue plaintiff. (Id. at B-13)

During the criminal trial, the court instructed the jury that it could only convict

---

[8]Plaintiff later contradicted this statement, however, alleging that he became semi-conscious while handcuffed, and that he was awake when he was put into a police cruiser for transport to the hospital. (D.I. 33 at ¶¶ 11-12, 14)

plaintiff of the crimes charged if it found that the officers were acting in their official duties when they arrested plaintiff. (Id. at B-118 to B-120)  If, however, the officers were **not** acting within their official duties, the jury was told that it must acquit plaintiff of the crimes charged. (Id.)  Despite plaintiff's claims that Leo had beaten him without justification,[9] the jury subsequently convicted him of four separate counts of resisting arrest and assault. (Id. at B-138 to B-39)  In the suit at bar, plaintiff now claims "that defendants Leo and David used excessive or malicious force to subdue him; that defendants [Thomas,] Fletcher, Daily, Bowers, Denney, and Hahn failed to protect him during the use of force, and that as a result, he sustained numerous physical and psychological injuries as a result of the defendant[s'] actions and omissions." (D.I. 3 at 2)

## III. STANDARD OF REVIEW

The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted); Christopher v. Harbury, 536 U.S. 403, 406 (2002). Additionally, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S.

___

[9]Plaintiff did not raise the issue of self defense at trial.  (D.I. 22 at B-53 to B-55) Instead, he relied on his counsel's argument that "[w]hen you're laying there and you're pounding somebody's face in . . . , I don't care what you're wearing that says 'police.' You're not acting in your official duty." (Id. at B-97 to B-98)

5

41, 47 (1957)). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (alteration in original) (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citations omitted). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson, 127 S. Ct. at 2200 (citations omitted).

## IV. DISCUSSION

The United State Supreme Court has held that, if judgment in favor of a plaintiff in a civil suit under 42 U.S.C. § 1983 would necessarily imply the invalidity of a prior criminal conviction, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. See Heck v. Humphrey, 512 U.S. 477, 484-87 (1994). This requirement "'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant . . . succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" Id. at 484 (first omission in original) (citations omitted).

The individual defendants base their motion to dismiss on the premise that all of

6

plaintiff's claims require this court to conclude that the officers used excessive force in apprehending plaintiff, and that to do so would necessarily imply the invalidity of plaintiff's prior conviction for resisting arrest and assault. The jury in plaintiff's criminal trial was specifically instructed that, in order for plaintiff to be guilty of the assault charges, the officers had to have been "acting in performance of their official duties." "By convicting plaintiff," the individual defendants argue, "the jury had to find that [ ] Leo **was** acting in the performance of his official duty and, ipso facto, that [ ] Leo **was not** using excessive force." Therefore, a judgment by this court that the officers used excessive force (and were acting outside the scope of their official duties) would call plaintiff's convictions for assault into question. (D.I. 20 at 21) (emphasis in original) While plaintiff admits that all of his claims would require a finding of excessive force by the officers, he argues that such a finding would not contradict the verdict from his criminal trial. (D.I. 31 at 6) Instead, plaintiff contends that the verdict against him only implies that the officers did not use excessive force as it relates to the specific criminal charges of which he was convicted: assault, resisting arrest, and impeding a federal officer engaged in the performance of his official duties.[10] (Id.) Plaintiff implores the court to instead look at the entire course of events described in his complaint under 42

---

[10]Plaintiff was convicted under 18 U.S.C. § 111, which states, in pertinent part, that it is a criminal offense to "forcibly assault, resist, oppose, impede, intimidate, or interfere [with designated government officials] while engaged in or on account of the performance of official duties." 15 U.S.C. § 111(a)(1).

7

U.S.C. § 1983 and the Fourth Amendment's reasonableness standard.[11]  (Id.)

The court finds that, even under the Fourth Amendment's objective reasonableness standard, plaintiff cannot overcome the specificity of the jury verdict in his criminal trial.  The judge directed the jury that "the Government must prove beyond a reasonable doubt that at the time of the alleged assault, the federal officer was engaged in the performance of his official duties."  (D.I. 22 at B-118 to B-120)  An officer who uses excessive force is not, in good faith, performing his official duties.  See United States v. Span, 970 F.2d 573, 581 (9th Cir. 1992).  Thus, the jury's verdict necessarily included an express conclusion that the officers did not use excessive force.  Contrary to plaintiff's claim that the jury only considered whether the officers were performing their official duties with respect to the narrow charges on trial, courts have routinely barred excessive force claims, pursuant to Heck, when the claims are "inextricably intertwined" with the same events leading to the plaintiff's conviction.  See Cummings v. City of Akron, 418 F.3d 676, 682-83 (6th Cir. 2005); Garrison v. Porch, Civ. A. No. 04-1114 (NLH), 2007 WL 776799, at *6-*7 (D.N.J. Mar. 9, 2007); Woods v. Cashier, Civ. A. No. 0:05-2211-DCN-BM, 2006 WL 2385275, at *8 (D.S.C. Aug. 17, 2006).  The events of the altercation between plaintiff and the officers who arrested him were so inextricably intertwined that the jury's verdict (which included the determination

---

[11]According to plaintiff, "[a] Fourth Amendment reasonableness inquiry is objective, so the question in this case is whether . . . Leo['s] and David's actions in effectuating plaintiff's arrest were objectionably reasonable, without regard to their underlying intent or motivation."  (D.I. 31 at 6, citing United States v. Johnstone, 107 F.3d 200 (3d Cir. 1997))

8

that the officers were performing their official duties and, therefore, not using excessive force) clearly includes all of the events transpiring during the short period of time during which the apprehension and arrest of plaintiff took place.

Plaintiff submits a collection of cases that purportedly bolster his argument that the court would not be running afoul of Heck in holding that the individual defendants employed excessive force during his arrest.[12] None of these cases is persuasive. The single case holding that a criminal conviction for assault does not preclude a civil suit premised on excessive force is distinguishable because there was a clear separation between the events that constituted the assault and the circumstances that led to the plaintiff's allegation of excessive force.[13] See Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996). Nelson, meanwhile, dealt with a § 1983 claim for excessive force brought by a man who had been convicted of resisting arrest (a crime requiring a finding that the arresting officer was justified in employing (or had been required to employ) "substantial force" in order to effectuate the arrest). See Nelson, 109 F.3d at 145. The Third Circuit, employing a Fourth Amendment objective reasonableness standard, found that the plaintiff's claim was not barred by Heck, since the fact that the officer might have been "justified in using 'substantial force' to arrest [the plaintiff] [did] not mean that he

---

[12]Specifically, plaintiff cites Nelson v. Jashurek, 109 F.3d 142, 145 (3d Cir. 1997); Simpson v. City of Pickens, 887 F. Supp. 126 (S.D. Miss. 1995); and Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996). (D.I. 31 at 7-9)

[13]In Smithart, the civil plaintiff was convicted of assaulting police officers with a deadly weapon for driving his truck at them; his allegations of excessive force stemmed from being "beaten beyond recognition" after the truck had been stopped and he already had been taken into custody. See Smithart, 79 F.3d 951.

9

was justified in using an excessive amount of force." Id. (finding that "there undoubtably could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable"). Unlike Nelson, the judge's instructions in the instant case, coupled with the jury verdict, establish that the officers were "acting in performance of their official duties" during plaintiff's arrest, meaning they could not have used excessive force. Had the officers employed excessive force in arresting plaintiff, plaintiff could not legitimately have been convicted of the crimes with which he was charged. (D.I. 22 at B-118 to B-120) Finally, the court in Simpson v. City of Pickens held that "it [was] possible for a finding that [the plaintiff] was resisting arrest to coexist with a finding that the police used excessive force to subdue him, 887 F. Supp. at 129; however, the prior verdict from the criminal trial in Simpson did not include a determination that the arresting officers did not use excessive force. Consequently, Simpson is distinguishable from the facts at bar.

Plaintiff cannot show that his underlying criminal conviction has been invalidated. See United States v. Lora-Pena, Crim. A. No. 06-1077, 2007 WL 1109244 (3d Cir. Apr. 13, 2007) (affirming plaintiff's conviction) In light of Heck, therefore, the court must grant the individual defendants' motion to dismiss on the grounds that a decision in plaintiff's favor would necessarily imply the invalidity of his criminal conviction. The fact that plaintiff was convicted on four separate accounts of assaulting, resisting arrest, or interfering with a federal officer in the performance of his official duties, coupled with the judge's instructions to the jury, effectively amount to a decision by the jury that the officers did not use any excessive force while arresting plaintiff on April 9, 2005 (and,

10

therefore, that the remaining individual defendants could not have been deliberately indifferent to the use of any such excessive force).[14]

## V. CONCLUSION

For the above reasons, the court will grant defendants' motion to dismiss. An appropriate order shall issue.

---

[14]Plaintiff's motion for appointment of counsel (D.I. 27) is denied as moot.

11